## Nicholas *versus* Phelps.—Freeman *versus* Same.

Where a defendant in a judgment dies within five years after the entry of the judgment, the lien of the same is continued by the 25th section of the act of 24th February, 1834, as to land bound by the judgment, for five years after his decease, though the defendant has aliened the land after the rendition of the judgment; and if *scire facias* be issued within five years after the decease, and be served on the terre tenant, the lien will be continued as against the terre tenant. Though the statute speaks of the lien of judgments on the land of defendant *at the time of his death*, it is to be interpreted as relating to land of which he was seized *at the rendition of the judgment*.

ERROR to the Common Pleas of *Wyoming county*.

Sherman D. Phelps, on the 19th January, 1841, entered a judgment in the Common Pleas of Luzerne county, against Lathrop, and Nicholas and Perrin Ross, for $95, to *April term* 1841, *No.* 252.

Lathrop, on the 2d August, 1841, obtained a rule to show cause why the judgment should not be opened as to himself, and he admitted to a defence; which rule, on the 2d December, 1841, was made absolute; after which no proceedings whatever were had on the judgment, *until the 2d May*, 1849, when the plaintiff filed the following præcipe:—

Sherman D. Phelps, assigned to Isaac H. Ross, *vs.* ——Nicholas, who survived Perrin Ross, and Elhanan W. Smith, and Franklin C. Ross, administrators of Perrin Ross, with notice to terre tenants. Issue Scire Facias, *post. an. et diem*, directed to revive and continue lien of judgment, *No.* 252, *of April term* 1841, with notice to terre tenants, &c.

The writ followed the præcipe, and did not name any individual as terre tenant. The sheriff was directed, by a letter of plaintiff's attorney, dated 6th June, 1849, to serve the writ on John Freeman, as terre tenant, and he returned the writ served on the administrators of Ross, on 16th June, and on Freeman, by directions of plaintiff's attorney, on the 18th June, as terre tenant. There was no return whatever as to Nicholas. Freeman came in on the return of the writ, and plead "that he is not terre tenant of any

[Nicholas *v.* Phelps, and Freeman *v.* Same.]

lands bound by lien of judgment on which this *scire facias* issued."
February 4th, 1850, judgment was taken against administrators for
want of a plea, and the same day the issue between the plaintiff and
Freeman, the terre tenant, was tried by a jury, who, under the
charge of the court, found for the plaintiff $138.65½ : judgment
was entered against the terre tenant, John Freeman. Freeman ex-
cepted to the charge.

On the trial, the plaintiff gave in evidence a deed from T. B.
Wall to Perrin Ross, for a lot in the village of Tunkhannock, dated
10th August, 1839, accompanied by evidence of possession in Wall,
and claim of ownership by Perrin Ross, and that Freeman had
been in possession of the premises about a year, and left, as was
agreed upon between the parties, *on the* 10*th May,* 1849 ; and he
further proved *that Perrin Ross died on the* 24*th May,* 1844.

The defendant gave in evidence the deed of Perrin Ross to P.
M. Osterhout and Willard Jackson, for the same lot, dated 10th
May, 1841, and recorded 18th June, 1841. And then showed the
possession of the lot, first in Mrs. Whitman, then in Wall, next in
Ross, next in Osterhout and Jackson, and then that John Jackson
built a house on it, and had possession of it.

Charge of JESSUP, J.—Perrin Ross, the defendant in this judg-
ment, died on the 24th May, 1844.

The judgment was entered on the 19th January, 1841. It was a
lien at the time of his death, and by the act of Assembly remained
a lien at the time of the issuing of this *sci. fa.* on the 3d May, 1849.
At that time, John Freeman was in possession of the premises con-
veyed by T. B. Wall to Perrin Ross, by deed dated the 10th Au-
gust, 1839.

The sheriff is directed to serve the writ generally on all
persons who are terre tenants of the lands bound by the judg-
ment. It appears that Freeman left the premises on the 10th
June, 1849, and the writ was served on the 16th June, 1849.
Freeman comes in and pleads that he is not terre tenant of the
premises bound by the judgment, and seeks to prevent a revival
of the judgment against the lands conveyed by Wall to Ross.
Ross, by his deed dated 10th May, 1841, conveyed to P. M. Os-
terhout and Willard Jackson. John Jackson, the sheriff, built a
house on the premises, which was occupied by Freeman.

Under this state of facts, the question is, can the plaintiff have
his judgment revived against the lands of which Freeman was in
possession at the impetration of the writ ? So far as Freeman is
concerned, this is a proceeding *in rem*. He is personally not re-
sponsible, even for costs. He shows nothing which should avail
against the revival of the judgment. From the evidence it would
seem that he ought not to have been named as terre tenant, inas-
much as he had no interest in the lands ; but he cannot take advan-
tage of that to defeat the revival of the judgment against the lands.

D

Whether Osterhout and Jackson will be affected by these proceedings, it is not necessary to decide now; and, if Sheriff Jackson be the owner, how far his rights are affected, we do not pretend to say: all we decide is, that under the whole evidence, the plaintiff is entitled, as against Freeman and his plea, to have his judgment revived.

To this charge, the defendant's counsel except.

The 25th section of the act of February 1834, relating to executors and administrators, provides that "all judgments, which, at the time of the death of a decedent, shall be a lien on his real estate, shall continue to bind such estate during the term of five years from his death; although such judgment be not revived by *scire facias* or otherwise, after his death."

It was assigned for error, that the court erred in charging "that the lien of the judgment was continued on Ross's death, by the act of Assembly, to the time of the issuing of the *scire facias*, on 3d May, 1849;" and to the last section of the charge.

The case was argued by *Harrison Wright* and *J. Brisbin*, for plaintiff in error.—It was contended, that the statute referred to by the court, act of 1834, February 24th, sec. 25, *Dunlop* 589, as continuing the lien of judgments against decedents, provides only for the continuance of liens which were upon *his* real estate at the time of *his death;* that to lands aliened *before his death*, it has no application; they are not, either by the letter or spirit of the act, reached by the extension of the lien; it was not "his real estate at the time of his death"—and it is not "such estate," that the lien continued to bind for the additional five years. The plaintiff here had nearly two years after the death of Perrin Ross, in which to fasten his lien for another period of five years, or during which he might have levied his execution in satisfaction of his judgment. After Ross's sale to Osterhout and Jackson, 10th May, 1841, it was no longer "his real estate" within the meaning of the statute. And, after the lapse of five years from the entry of the judgment, on 1st March, 1841, the lands were discharged wholly from its lien.

By the direction of the plaintiff's attorney, the writ was served on Freeman as a terre tenant—neither the writ nor return of the sheriff designated any particular lands as encumbered by the judgment, as they should. Freeman came to make answer in the character, the plaintiff himself had given him, and by his plea denied that he was terre tenant of any lands bound by lien of the judgment; and when the plaintiff joined him in issue on that point, the burthen was on him to show the affirmative of the question he had raised, and it was nowhere shown. He was not terre tenant—but the plaintiff, by the exhibition of the deed from Ross to Osterhout and Jackson, stripped the judgment of all claim to lien, and restricted the recovery to lands of which Ross died owner.

[Nicholas *v.* Phelps, and Freeman *v.* Same.]

*Richards*, for defendant.—As between the judgment debtor and creditor, the lands are the lands of the debtor, even though he has aliened after the lien attached. The provision of the act referred to, is as follows:—"And after the expiration of such term" (five years from the death of the decedent) "such judgments shall not continue a lien on the real estate of such decedent as against a bonâ fide purchaser, mortgagee or other judgment creditor of such decedent," &c. Unless the legislature designed by this section to extend the lien in all cases where it existed at the time of the death of the debtor, and as well against the purchaser from him as against heirs and devisees, no provision would have been made that the lien should not continue more than five years from the death of decedent as against such purchaser. When the legislature provide for the extension of liens, and expressly declare that in a given case the lien *shall* not continue beyond the time named, what is it more or less than a declaration that until that time, in the same case, the lien *shall* continue?

Error 2d. At the impetration of the writs in these cases, and so far as the defendant in error or his counsel knew at the time of the service, John Freeman was living on the land against which we seek to revive these judgments; and to give him an opportunity to defend, in case he claimed title to the land, the *scire facias* was served on him. If he claimed title, then he might come in and defend, but if he did not claim title derived from Perrin Ross, then the service on him was a nullity: he could be in no way affected by it, and he came into court a mere volunteer, having no interest to defend or right to be affected.

The opinion of the court was delivered, July 15, by

COULTER, J.—The judgment was a lien on the land at the time of the death of Perrin Ross, to wit, the 24th May, 1844. It was entered on the 19th January, 1841, before alienation; and, notwithstanding, the subsequent sale to Osterhout and Jackson was a subsisting and valid lien on the premises on the 24th of May, 1844. Although the act of Assembly of 1834 speaks of the continuance of the lien of judgments on the land of defendant, at the time of his death, and extends it for five years from that period, it is nevertheless to be interpreted as relating to lands of which he was seized at the rendition of the judgment. Otherwise, the statute might be made inoperative by a sudden alienation shortly before death. The statute operates upon subsisting liens at the time of the decease, more particularly than upon the lands, and was designed to extend the lien five years, so as to prevent executors and administrators from being harassed immediately after the death of the decedent; and to give them time to bring the lands and effects into a liquidation of the debts of the deceased, through the

[Nicholas *v.* Phelps, and Freeman *v.* Same.]

instrumentality of the Orphans' Court; and also to save estates from unnecessary costs.

The object of the statute is answered by this reasonable interpretation, and creditors and alienees are not injured or prejudiced, nor heirs or devisees; but, on the contrary, they are benefited. The five years from the death had not expired when the *scire facias* was issued, to wit, on the 3d of May, 1849, and the plaintiff was entitled to judgment against the administrators of Ross, the original defendant.

Freeman was served with the writ as terre tenant, and, although he was not in possession at the time of service, (having left four or five days before,) he was in possession at the impetration of the writ. He appeared and pleaded *nullis terris.*

It does not appear that he was terre tenant, in the proper signification of that term, at any time; that is, that he had an interest in the freehold, acquired after the judgment. But our statute directs, that writs of *scire facias* shall be served on terre tenants, or persons occupying the real estate bound by the judgment, on the presumption, it may be supposed, that the mere occupant would give notice to the person under whom he held. And in our practice, it has not been very common to distinguish between terre tenants and occupants.

Thus it was held in 1 *Barr* 101, that the service of a *scire facias,* upon the former owner, who remained in possession after he had made an assignment for the benefit of creditors, was good and valid.

In cases where the *scire facias* is against terre tenants or occupants, the judgment on the *scire facias* binds only the land bound by the judgment, of which they were in possession; Coyle *v.* Reynolds, 7 *Ser. & R.* 328; and if the plaintiff attempted to enforce it against them personally, the court would interfere in a summary manner.

As Freeman thought proper to appear and plead, the issue must be disposed of; and as the plea always refers to the period of the impetration of the writ, unless it be special, the trial and verdict relate to that point of time, and then Freeman was in possession. We see no error in the instruction of the court below on the subject, under all the evidence disclosed on the paper-book. The terre tenant or occupant sought to throw an obstruction in the way of the plaintiff. The judgment can do him no harm. It is powerless against him, except as to the lands bound by the original judgment of which he was in possession at the impetration of the writ.

The judgment against the administrators of the original defendant and against the terre tenant is affirmed.