## WOODS v. PRIMM.

(Circuit Court of Appeals, Seventh Circuit. June 4, 1926.)

No. 3684.

**1. Judgment ⟨⟩800(8).**

Under Hurd's Rev. St. Ill. 1921, c. 77, §§ 1, 2, 4, 6, and particularly 39, execution may issue on judgment against real estate of a person, since deceased, on which judgment has become a lien, regardless of whether deceased died seized of such property or not.

**2. Judgment ⟨⟩860.**

At common law, execution could not issue on judgment against person, since deceased, without revival of judgment against his heirs or terre-tenants.

**3. Courts ⟨⟩366(10).**

State court's interpretation of state statute affecting issuance of execution will be accepted by federal court.

**4. Judgment ⟨⟩798—Judgment creditor, precluded from issuing execution against land by death of judgment debtor for 12-month period is "delayed," within meaning of another section, extending limitations, notwithstanding conveyance by debtor before death (Hurd's Rev. St. Ill. 1921, c. 77, §§ 2, 39).**

Judgment creditor, precluded by Hurd's Rev. St. Ill. 1921, c. 77, § 39, from issuing execution against land of deceased judgment debtor for 12-month period provided by that statute, is "delayed," within meaning of section 2, and such period will be excluded in computing seven-year limitation, notwithstanding judgment debtor conveyed title before death.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Delay.]

**5. Adverse possession ⟨⟩89.**

Absence of proof of payment of taxes during requisite 7-year period is sufficient to defeat asserted title by limitation, under Hurd's Rev. St. Ill. 1921, c. 83, § 6.

Appeal from the District Court of the United States for the Southern Division of the Southern District of Illinois.

Suit by Margaret L. Primm against Charles H. Woods. Decree for plaintiff, and defendant appeals. Reversed and remanded, with directions to dismiss.

On September 9, 1909, judgment for about $5,000 was rendered in the circuit court of Logan county, Ill., against the grantor of appellee, who then owned the land in said county here involved. Within a year after judgment, execution thereon issued and was returned nulla bona. May 26, 1914, the grantor conveyed the land to appellee, her daughter, for the expressed consideration of $1 and other good and valuable considerations, the deed being filed for record a few weeks thereafter, and appellee went into possession of

the property. May 27, 1916, the grantor died. August 29, 1917, the judgment creditor caused execution to issue, statutory notice thereof having been given the administrator of deceased, and upon sale thereunder appellant became the purchaser. In 1918 appellee filed her bill, alleging the invalidity of the sale and of the execution, on the ground that the lien of the judgment had expired. The District Court found for appellee, and decreed that the execution and the proceedings thereunder were void, and setting aside as a cloud on appellee's title the sheriff's deed which had issued to appellant in 1918.

William L. Patton, of Springfield, Ill., for appellant.

Dulaney Mahan and Chas. E. Rendlen, both of Hannibal, Mo., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). The validity of the execution and of the sheriff's sale and deed thereunder depends upon the interpretation of the applicable sections of chapter 77 of the Revised Statutes of Illinois (Hurd's Rev. St. 1921) relating to judgments and executions. They are:

"Sec. 1. A judgment of a court of record shall be a lien on the real estate of the person against whom it is obtained * * * from the time the same is rendered or revived for the period of seven years and no longer. * * * When execution is not issued on a judgment within one year from the time the same becomes a lien it shall thereafter cease to be a lien, but execution may issue upon such judgment at any time within said seven years, and shall become a lien on such real estate from the time it shall be delivered to the sheriff or other proper officer, to be executed.

"Sec. 2. When the party in whose favor a judgment is rendered is restrained, by injunction out of chancery, or by appeal, or by the order of a judge or court, or is delayed, on account of the death of the defendant, either from issuing execution or selling thereon, the time he is so restrained or delayed shall not be considered as any part of the time mentioned in sections 1 or 6 of this act."

"Sec. 6. No execution shall issue upon any judgment after the expiration of seven years from the time the same becomes a lien, except upon the revival of the same by scire facias; but real estate levied upon within said seven years may be sold upon a venditio rei exponas [venditioni exponas], at any time within one year after the expiration of said seven years."

"Sec. 39. When a person shall die after the rendition of a judgment or decree for the payment of money against him is obtained in a court of record, execution may issue against the real estate of such deceased person, or sale may be made under such decree without reviving the judgment or decree against his heirs or legal representatives: Provided, that no execution shall issue or sale be made until after the expiration of twelve months from the death of such deceased person, nor shall any sale be had on any such execution or decree until the person in whose favor the judgment or decree is sought to be enforced shall give to the executor or administrator, or if there be neither, the heirs of the deceased, at least three months notice of the existence of such judgment or decree, before issuing execution or proceeding to sell, which notice shall be in writing when the parties required to be notified reside or may be found within the state, and their place of residence known, otherwise publication notice shall be given in the manner directed for chancery proceedings in sections 12 and 13 of an act entitled 'An act to regulate the practice in courts of chancery,' approved March 15, 1872."

[1] By issuance of the first execution the lien of this judgment for at least seven years after its rendition is conceded. The seven-year period ended September 18, 1916, but it is appellant's contention that, through the death of the grantor on May 27, 1916, the lien was extended for the further period of one year, as specified in section 2 and the proviso to section 39, within which year, but after termination of the original seven-year lien period, the execution issued and sale thereunder was had. For appellee it is contended that section 39, under which alone execution may be issued upon a judgment against a person since deceased, refers only to real estate whereof the deceased died seized, and that the property in question having been conveyed by the debtor, upon her death the lien of the judgment was enforceable against the grantee only within the seven-year period of the lien unaffected by the grantor's death.

[2] At common law, upon the death of a judgment debtor, execution could not issue on a judgment rendered against him without revival of the judgment against his heirs and terre-tenants. Statutory enactments, beginning at a quite early period, undertook to simplify the remedy of the judgment creditor, by permitting execution to issue after the death, upon terms which such statutes prescribed, without the necessity of proceedings

for reviving the judgment. Various enactments culminated in Illinois in the statute of 1872 containing the essential provisions above quoted. As is well stated in the brief for appellee, it was intended by the proviso of section 39 "to protect the heirs and administrators from being sacrificed by sale on execution before opportunity was had to marshal the assets of the estate and meet the existing liens." But it is insisted that the reason for such protection does not exist where, prior to the decease, the real estate whereon the judgment was a lien had been aliened by the debtor.

It seems clear that in any event the estate and the heirs of the deceased have a distinct interest in the conveyed real estate which is subject to the judgment lien. The judgment is against the deceased and a claim against his estate, and if the conveyed real estate on which it is a lien fails to realize the amount of the judgment, the estate would be liable for the deficiency; and if the conveyance is by warranty deed, and the title of the grantee becomes lost or, charged by reason of enforcement of the judgment lien, the grantee would have recourse to the estate for breach of the warranty. So there is abundant reason why the delay and notice prescribed in section 39 should be applicable as well to real estate which the deceased judgment debtor had conveyed.

[3] Does section 39 limit its application to lands whereof the judgment debtor died seized? The industry of able counsel on both sides, together with such search as we have been able to make, shows no adjudication of the precise question by the courts of Illinois, whose interpretation of the statute we would, of course, follow. Appellee, with apparent confidence, cites Kinkade v. Gibson, 209 Ill. 246, 70 N. E. 683, where the court said: "We are of the opinion that execution could be issued and would become a lien while the title remained in the heirs, at any time within seven years after the judgment was revived, not including delay on account of the death of the judgment debtor."

Significance is attached to the words "while the title remained in the heirs." The judgment was against Kinkade, but as no execution had issued within a year after its rendition, nor thereafter up to his death, it was no lien upon his real estate. Even had the lands been aliened by the deceased, we would not have the same question as here, since his grantee would have taken free of the judgment lien. Of course, the only property there in question was property which came to the heirs, and the question was whether the prop-

erty could, within the statutory period after Kinkade's death, and while it was in the hands of his heirs, be sold under an execution on the judgment issued while the heirs possessed it; for clearly, if either the deceased or the heirs, while the property was not subject to the lien, had disposed of it to a good faith purchaser, it could not thereafter have been subjected to the lien. The emphasized words described only the condition there present, and did not undertake to lay down a general rule that section 39 had application only where the property of the deceased judgment debtor came into possession of his heirs or devisees. The concluding sentences of that opinion may afford a helpful background in the consideration of our question:

"The statute fixes no limitation to the issuance of execution against the lands of the deceased judgment debtor other than the general provision and the provision that the delay on account of the death of the defendant shall not be considered as any part of the time for issuing execution. The provision is general that execution may issue against the real estate of the deceased judgment debtor, provided that no execution shall issue until after the expiration of twelve months and after notice to the legal representative or heirs. There seems to be no sufficient reason why the lands of the deceased judgment debtor should not be subject to execution within the statutory period, so long as they are held by his heirs or devisees. The death of the judgment debtor does not change the legal status of the judgment, and the statute only affects its enforcement by staying execution for a fixed period."

Had this grantor lived, there is no question but that the land could have been sold on execution issued at any time within the statutory seven years, notwithstanding her conveyance of it, and if under section 39 "the death of the judgment debtor does not change the legal status of the judgment, and the statute only affects its enforcement by staying execution for a fixed period" we perceive no reason for differentiating in this regard as to this judgment.

Section 4 of the act provides that "the person in whose favor any judgment, as aforesaid, may be obtained, may have execution thereon * * * against *the lands and tenements* * * * *of the person against whom the same is obtained.* * * *" But no one will contend that the more specific words "lands * * * of the person against whom the same is obtained" would be so construed that the execution may not in the debtor's lifetime issue against the same lands aft-

er their transfer by the judgment debtor where the judgment had become a lien thereon. But if the words in section 39 are to be limited to lands of which deceased died seized, the same rule of construction would limit those of section 4 to lands owned by the debtor at the time of issuance of the execution, since in the same sense, if theretofore aliened, they were not "lands of the person against whom the same [judgment] is obtained."

We are of opinion that by section 39 it was undertaken to enable the judgment creditor to proceed with his execution in case of the death of the debtor in like manner as he could proceed under section 4 against the debtor living, and against any of his real estate whereon the judgment had become a lien, with the difference that in case of death the right to issue execution was stayed for one year thereafter, and notice is required, and the time during which issuance of execution is thus deferred is excluded from the running of the seven-year lien period.

[4] It is urged that, notwithstanding section 39, the creditor might within the seven-year period have proceeded with the concurrent remedy of revival by scire facias against appellee, and therefore was not "delayed" as specified in section 2. We see nothing in the statute to indicate that one in the situation of this judgment creditor is excepted from the relief which section 39 was designed to afford. The wording of section 2 is not that the creditor is delayed *in collecting his judgment* on account of the death, but delayed on that account "from issuing execution," in which case the time of delay is not counted in the duration of the statutory lien. Surely if the death did delay the issuance of execution for the year, thus bringing this creditor within the terms of the statute, and giving the additional year within which to take out execution, his right to revive the judgment against appellee does not exclude the right to proceed by execution.

Under a similar statute as to extension of lien in case of the death of a judgment debtor, practically the same situation was passed upon by the Pennsylvania Supreme Court in an early case, and the conclusion reached that "although the act of assembly of 1834 speaks of the continuance of the lien of judgments on the land of defendant, at the time of his death, and extends it for five years from that period, it is nevertheless to be interpreted as relating to lands of which he was seized at the rendition of the judgment. Otherwise, the statute might be made inoperative by a sudden alienation shortly before death." Nicholas v. Phelps, 15 Pa. 36. The case was followed by the same court in Mercy Hospital v. McCartan, 247 Pa. 328, 93 A. 621, but with an intimation that, but for the length of time intervening since the first decision, the proposition might again be considered. We conclude on this question that the words "real estate of such deceased person" must be held to mean real estate which at the time of the death was subject to the lien of the judgment, or by issuance of execution thereafter within the lien period, would become subject to it.

[5] A supplemental bill filed in 1925 asserts title in appellee under section 6, c. 83, Rev. Stats. Ill., which provides that seven years' possession of land in good faith under color of title, with payment of taxes, shall be held to establish ownership to the extent of paper title. The decree does not pass on this issue, but it is sufficient to say of it that payment of taxes by appellee for the requisite full seven-year period does not appear from the evidence, a fact of itself sufficient to defeat the asserted title by limitation.

The decree of the District Court is reversed, and the cause remanded, with direction to dismiss the bill and supplemental bill for want of equity.